IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Risa Rowe,

                Plaintiff,

v.

Guardian Automotive Products, Inc.,

                Defendant.

Case No. 3:04CV7145

ORDER

This is an Ohio law invasion of privacy claim by plaintiff Risa Rowe against her former employer, Guardian Automotive Products, Inc. (Guardian). Rowe claims that Guardian invaded her privacy by asking her questions about a domestic violence incident in which Patrick Campbell, her co-worker and live-in boyfriend, injured her. After Rowe refused to answer its questions, Guardian terminated Rowe for failing to cooperate with its Workplace Violence Program (Program).

Jurisdiction exists pursuant to 28 U.S.C. § 1332.

Pending is Guardian's motion for summary judgment. For the following reasons, the motion shall be granted.

**Background**

Rowe worked at Guardian's Upper Sandusky, Ohio, plant from 1988 until her termination on April 28, 2003. With guidance from its Incident Management Group (Group) and Dr. Harley Stock in April, 2001, Guardian created its corporate-wide Workplace Violence Program and a Workplace Response Team (Team). The Team consists of Guardian employees from various

departments, such as human resources (HR), security, and risk management. Stock serves as a consulting forensic psychologist to the Program and Team.

Among other responsibilities, the Program identifies risks of violence in the workplace. Under the Program, employees must report threats of violence, including potential acts or threats by or against an employee. The Program also requires employees to cooperate with investigations that may be implemented following a report of any such possible violence. The Program provides that an employee who fails to comply with an investigation or any other provision of the Program is subject to corrective discipline, including termination.

In 2002, Upper Sandusky HR employees John Curtis and Linda Dean received Program-related training at Guardian's corporate headquarters. Curtis and Dean then trained employees at the Upper Sandusky plant. Each employee receiving training signed a form indicating as much.

Rowe was on a medical leave of absence when the training occurred. Rowe acknowledged, however, that she knew of the Program and agreed with its purpose.

In June, 2001, Rowe began dating her co-worker Campbell, who eventually moved in with her in March, 2002. One night during Rowe's medical leave of absence in 2002, the couple argued and Campbell broke three of Rowe's ribs. After the injury, Rowe went to a friend's house. The friend called police and escorted Rowe to the hospital for emergency treatment.

Rowe filed a police report about the incident. In January, 2003, Campbell was convicted of domestic violence and placed on probation. Rowe temporarily cut off all contact with Campbell. She learned of the conviction by reading about it in the newspaper, as the state had prosecuted Campbell on its own accord without further involvement on her part.

Rowe had not informed Guardian about the incident, her injuries, or Campbell's conviction. In her view, the incident was private, she was on leave at the time, and the incident had not occurred at work. She returned to work from her leave of absence in February, 2003.

In February, 2003, Campbell received a thirty-day jail sentence for violating his probation by driving without a license. While Campbell was in jail, the Team learned that his incarceration may have involved domestic violence and decided to investigate.

The Team discovered that Campbell had a lengthy criminal history involving alcohol abuse, threats to kill his ex-wife with a gun, physical acts of violence against his ex-wife, and a conviction for domestic violence against Rowe. Interviews with Campbell's supervisors also indicated that Campbell exhibited violent and angry behavior. Campbell's co-workers also knew of the domestic violence conviction.

Guardian decided to question Rowe about Campbell before he was released from jail. On April 7, 2003, the Team instructed April Main, an HR employee, to interview Rowe. Main told Rowe that the Team knew that Campbell had injured Rowe. Main asked for Rowe's opinion as to whether Campbell was a threat to other employees. Rowe became agitated and stated that her personal life was private.

The Team believed that Rowe was not cooperative and wanted to investigate further. On April 15, 2003, Rowe had a second meeting with HR employees. Main was not present. Curtis and Tom Barker questioned Rowe, while the Team listened via telephone. Curtis and Barker instructed Rowe that the Team's primary purpose was to protect her, and that they expected her to cooperate. Nonetheless, when the two men questioned Rowe about the police report, she became agitated and told them that they were invading her privacy.

3

On April 17, 2003, the Team and Stock conducted a threat assessment of Campbell. Stock concluded that Campbell posed a violent threat to the workplace. Stock recommended that Guardian terminate Campbell. Stock recommended that Guardian terminate Rowe if she continued refusing to cooperate. On April 24, 2003, Guardian terminated Campbell, but continued employing Rowe.

Guardian was concerned that Campbell would react violently to his firing. Guardian wanted Rowe to acknowledge that Campbell posed a risk and agree to inform them if he made any threats against her or other employees.

On April 25th, the Team had Rowe come to the office for a third time. Stock, via telephone, did most of the talking, while Main and Curtis mainly stood in the office listening. Stock asked Rowe about: 1) her mental well being; 2) the details of the domestic violence incident; and 3) whether she sought medical attention. Rowe became visibly upset and stated that they were invading her privacy. The meeting ended when Rowe abruptly left the room.

On April 28th, Rowe reported to work. HR employees called her into the office for a fourth time. Main and Curtis were present and Stock attended via telephone. Stock asked Rowe whether she would inform Guardian if Campbell threatened to kill her, another co-worker, or a supervisor. Rowe refused to agree.

In their discovery depositions, Main, Curtis, and Stock all testified that Rowe explicitly said "no," while Rowe testified that she said "why should I?" After a brief recess, Guardian terminated Rowe for failing to cooperate with the Program.

Rowe's complaint alleges claims of sex discrimination, emotional distress, and invasion of privacy. Rowe's opposition to Guardian's summary judgment motion addresses only its arguments

4

as to her emotional distress claim. Her other claims will thus be dismissed without consideration of their merits.

## Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must show the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present evidentiary material to support the motion. *Celotex*, 477 U.S. at 324.

In deciding the motion for summary judgment, I accept the evidence of the nonmoving party as true, construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmoving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc*., 504 U.S. 451, 456 (1992).

## Discussion

Ohio recognizes three causes of action for an invasion of privacy claim: 1) unwarranted appropriation or exploitation of one's personality; 2) publicizing of private affairs with which the public has no legitimate concern; or 3) wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *York v. Gen. Elec. Co.*, 144 Ohio App. 3d 191, 194 (2001).

The first basis for a claim of invasion of privacy (exploitation) is not at issue in this case. As to the other bases for such claim (publication and intrusion), the defendant is entitled to summary judgment for the reasons that follow.

### A. Publication

To establish a claim of wrongful publication, Rowe must show that: 1) a public disclosure occurred; 2) the disclosure involved facts concerning the private life of an individual; 3) the matter disclosed would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; 4) the disclosure was intentional; and 5) the matter publicized is not of legitimate concern to the public. *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App. 3d 163, 166-67 (1985); *Roe v. Heap*, 2004 WL 1109849, at *12 (Ohio App.).

Rowe cannot satisfy the public disclosure element, which requires a communication to "the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Killilea*, 27 Ohio App. 3d at 166. Ohio courts have held that disclosure is not public if it occurs only to a small group. *Davis v. City of Cleveland*, 2004 WL 2829027, at *9 (Ohio App.) (*citing Alexander v. Culp*, 124 Ohio App. 3d 13, 21 (1997)).

The proper focus, however, in determining whether a claim satisfies the public disclosure element is not on the number of people who hear the disclosure but on whether the matter was "substantially certain to become public knowledge" because of defendant's disclosure. *Killilea*, 27 Ohio App. 3d at 166; *Roe*, 2004 WL 1109849 at *13.

Guardian argues that publication of private matters to a small group of people is insufficient to constitute public disclosure. Rowe disputes that Main, Curtis, and Barker constitute a small group.

Rowe also argues that because these three individuals were not on the Team, they were wrongfully involved in the interview process.

It does not matter whether Main, Curtis, and Barker were members of the Team. Nor does it matter whether they constitute a small group. The test is whether the disclosure was "substantially certain to become public knowledge," and the answer is that it was not.

Main, Curtis, and Barker were either involved with the Program or work in the HR department. No rational jury could find that they were not properly in attendance.

In any event, the interview notes did not circulate outside the Program. Publication only occurred internally and was limited to relevant company personnel. Rowe cannot, under any interpretation of the facts, establish that the information was communicated to the public or likely to be so communicated. Thus, Rowe cannot support a claim of wrongful publication.

### B. Wrongful Intrusion

To establish wrongful intrusion, Rowe must show that there was: 1) a wrongful intrusion; 2) into one's private activities; 3) in a manner that would outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Haller v. Phillips*, 69 Ohio App. 3d 574, 578 (1990). Rowe cannot establish the second element.

To satisfy the second element, Rowe must show that the questioning intruded into her private activities. Rowe seeks to establish this element by noting that Guardian employees questioned her about topics that were not related to the domestic violence incident.

Rowe alleges that Guardian employees asked her: about her mental and physical health; whether she had sought medical help; and about details of her relationship with Campbell.

7

Ohio law states that the wrongful intrusion theory "is akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs." *Killilea*, 27 Ohio App. 3d at 166. The issue is whether the Guardian employees intentionally interfered with Rowe's interest in solitude or seclusion. *Id.*

Publicity is a relevant factor in determining whether something is a private activity. A defendant is not liable for giving further publicity about information that is already public. *Killilea*, 27 Ohio App. 3d at 166. If someone files a public report, the information in that report is not private. Rowe reported the domestic violence incident by filing a police report in March, 2002, thereby making the issue public.

Indeed, other public documents about the incident further emphasize that the matter was not (and is not) private. Campbell's conviction was publicly available in court records. The local newspaper reported on the conviction. Guardian employees learned about the incident by reading about the conviction in the newspaper.

The questions Guardian employees asked Rowe did not constitute a trespass into Rowe's private matters. The violent incident was a legitimate concern for the company and the questions were relevant to that publicly-known event. This claim fails, therefore, because Rowe cannot satisfy the second element of her claim of wrongful intrusion.

## Conclusion

In light of the foregoing, it is

ORDERED THAT defendant's motion for summary judgment be, and the same hereby is, granted.

So ordered.

/s/James G. Carr
James G. Carr
United States District Judge